**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOUGLAS SMITH,** | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:11-CV-02093** |
| vs. | : | **(Complaint Filed 11/8/11)** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | : | **(Judge Caputo)** |
| Defendant | : | |

**MEMORANDUM**

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Douglas Smith's claim for social security disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Smith meets the insured status requirements of the Social Security Act through December 31, 2013. Tr. 11, 13, 121, 123 and 139.[1]

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or

---

[1] References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on January 13, 2012.

other disabled individuals who have little or no income.

On October 20, 2009, Smith filed protectively[2] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 11, 69, 70, 110-120, 125-126, 136 and 139. The applications were initially denied by the Bureau of Disability Determination[3] on February 12, 2010. Tr. 11 and 77-84. On April 23, 2010, Smith requested a hearing before an administrative law judge. Tr. 11 and 92-94. After over 10 months had passed, a hearing was held on March 3, 2011. Tr. 11 and 21-67. On May 25, 2011, the administrative law judge issued a decision denying Smith's applications. Tr. 11-20. On July 25, 2011, Smith filed a request for review with the Appeals Council and on September 9, 2011, the Appeals Council concluded that there was no basis upon which to grant Smith's request. Tr. 1-3 and 5-7. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Smith then filed a complaint in this court on November 8, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on May 14, 2012, when Smith elected not to file a reply brief.

Smith, who was born in the United States on July 18, 1982, withdraw from

---

[2] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[3] The Bureau of Disability Determination is a state agency which initially evaluates applications for disability insurance and supplemental security income benefits on behalf of the Social Security Administration. Tr. 71 and 81.

[4] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

2

school in 1999 after completing the 11th grade. Tr. 110, 114, 136 and 149. Smith stated in documents filed with the Social Security Administration that he can read, write, speak and understand the English language and perform basic mathematical functions such as counting change. Tr. 143 and 156. During his elementary and secondary schooling, Smith attended regular education classes. Tr. 149. After withdrawing from school, Smith did not obtain a General Equivalency Diploma. Tr. 34. Smith completed in 1999 some training in "electrical construction." Tr. 150.

Smith has past relevant employment[5] as a laborer in a print factory which was described by a vocational expert as unskilled, heavy work; as a welder/steel fabricator which was described as semi-skilled, medium work; as a stocker/cleaner/cashier at a convenience store described as semi-skilled, heavy work; as a butcher at a grocery store described as skilled, heavy work; as an assistant in a meat department of a grocery store described as unskilled, heavy work; as a fast food worker (cook/preparer) described as skilled, medium work; as a laborer at a steel rope factory described as semi-skilled, medium work; and as a laborer at a tire store/garage described as semi-skilled, heavy work.[6] Tr. 50-53, 145 and

---

[5]Past relevant employment in the present case means work performed by Smith during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

[6]The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

(continued...)

164.

Records of the Social Security Administration reveal that Smith had earnings in the years 1999 through 2008. Tr. 122. Smith's highest annual earnings were in 2001 ($12,571.39) and his second highest earnings in 2008 ($11,900.43). Id. Under the regulations of the Social Security Administration, Smith's work and earnings only amounted

---

[6](...continued)
    Jobs are sedentary if walking and standing are required
    occasionally and other sedentary criteria are met.

    (b) *Light work*. Light work involves lifting no more
    than 20 pounds at a time with frequent lifting or
    carrying of objects weighing up to 10 pounds. Even
    though the weight lifted may be very little, a job is
    in this category when it requires a good deal of
    walking or standing, or when it involves sitting most
    of the time with some pushing and pulling of arm or leg
    controls. To be considered capable of performing a
    full or wide range of light work, you must have the
    ability to do substantially all of these activities.
    If someone can do light work, we determine that
    he or she can also do sedentary work, unless there
    are additional limiting factors such as loss of fine
    dexterity or inability to sit for long periods of time.

    (c) *Medium work*. Medium work involves lifting no
    more than 50 pounds at a time with frequent lifting or
    carrying of objects weighing up to 25 pounds. If
    someone can do medium work, we determine that
    he or she can do sedentary and light work.

    (d) *Heavy work*. Heavy work involves lifting no more
    than 100 pounds at a time with frequent lifting or
    carrying of objects weighing up to 50 pounds. If
    someone can do heavy work, we determine that he
    or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

to substantial gainful activity in 2001 and 2008.[7]  Smith's total reported earnings from 1999 through 2008 were $58,296.84. Id.  Smith has no reported earnings after 2008. Id.

Smith claims that he became disabled on October 19, 2008,[8] because of both physical and mental impairments. Tr. 99, 118, 164.  The physical impairments alleged include a history of multiple fractures of the bones of the lower limbs and a fracture of a thoracic vertebra. Tr. 13, 69, 81 and 144.  The mental impairments alleged are anxiety and panic attacks. Tr. 42-43.  The impetus for Smith's impairments was a motorcycle accident that occurred on October 19, 2008.  Tr. 144. The injuries sustained can be fairly described as recklessly, or at least negligently, self-inflicted harm.  Smith after consuming alcohol to the point of intoxication (over twice the legal limit)[9] fled from the police on the motorcycle and crashed into a parked vehicle.  Tr. 328, 468 and  472; Doc. 6, Plaintiff's Brief, p. 2.  Smith

---

[7]Pursuant to Federal Regulations a person's earnings have to rise to a certain level to be considered substantial gainful activity.  The official website of the Social Security Administration reveals that in 1999 and 2000 the amount was $700 per month ($8400 per year); in 2001 the amount was $740 per month ($8880 per year); in 2002 the amount was $780 per month ($9360 per year); in 2003 the amount was $800 per month ($9600 per year); in 2004 the amount was $810 per month ($9720 per year); in 2006 the amount was $860 per month ($10320 per year) in 2007 the amount was $900 per month ($10800 per year); and in 2008 the amount was $940 per month ($11280 per year). Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html (Last accessed May 6, 2013).

[8]Smith was 26 years old on the alleged disability onset date and 28 at the time of the administrative hearing and  when the ALJ issued his decision.  At all times relevant to these proceedings Smith was considered a "younger individual."  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

[9]Smith's blood alcohol level was 196 mg/dL. Tr. 288. The legal limit in Pennsylvania is a blood alcohol level of .08 percent or 80 mg/dL.  75 Pa.C.S.A. § 3731; Alcohol Abuse Health Center, WebMD, http://www.webmd.com/mental-health/alcohol-abuse/blood-alcohol?page=2 (Last accessed May 6, 2013).

suffered an open left tibia (shinbone) fracture, a left comminuted[10] fibula (the calf bone) fracture, a non-displaced right fibula fracture, burns across the lower calf involving skin loss, a burst compression fracture of the T12 vertebral body and pedicles,[11] fractures of the nasal bones, severe facial and scalp lacerations and a neck laceration. Tr. 255-256, 399, 406, 466-468 and 472-474.  Smith was initially treated in the emergency department at the Geisinger Wyoming Valley Medical Center but was then admitted to the hospital on October 19, 2008 and not discharged until November 7, 2008. Id.  During his hospital stay, Smith underwent, *inter alia*, spinal fusion surgery. Id.  Smith claims that his mental impairments and the pain associated with his physical impairments prevent him from working in any capacity. Id.

        The administrative record in this case is 584 pages in length and we have thoroughly reviewed that record.  The medical records reveal that Smith sustained

---

[10] A comminuted fracture is where the bone breaks into multiple pieces.

[11] "A burst fracture is a spinal injury where the vertebra breaks due to immediate and severe compression.  Immediate trauma such as a car accident or a severe fall are the leading causes for burst fractures with pieces of the vertebra shattering into surrounding tissues and sometimes the spinal canal.  This is different from a compression fracture in that the vertebra breaks into multiple directions. . . .Braces, a body case, or surgery are the most common methods of treatment.  Patients with burst fractures can feel the effects long after their treatment." Burst Fracture Definition, spine-health, http://www.spine-health.com/glossary/burst-fracture (Last accessed May 7, 2013).  A vertebra consists of several elements, including the vertebral body (which is the anterior portion of the vertebra), pedicles, laminae and the transverse processes.  The vertebral body is the largest part of the vertebra and is somewhat oval shaped. The pedicles are two short processes made of bone that protrude from the back of the vertebral body.  The laminae are two broad plates extending dorsally and medially from the pedicles and fusing to complete the vertebral arch (which is the posterior portion of the vertebra) and encloses the spinal cord.  On an axial view of the vertebra, the transverse processes are two somewhat wing-like structures that extend on both sides of the vertebral body from the point where the laminae join the pedicles. The transverse processes serve for the attachment of ligaments and muscles.

substantial physical trauma as a result of the motorcycle accident. Smith has not worked since the date of the accident.

For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting

Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Another critical requirement is that the Commissioner adequately develop the record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of benefits proceedings, regardless of whether the claimant is represented by counsel."); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th Cir. 1986); Reed v. Massanari,

270 F.3d 838, 841 (9th Cir. 2001); Smith v. Apfel, 231 F.3d 433. 437 (7th Cir. 2000); see also Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). If the record is not adequately developed, remand for further proceedings is appropriate. Id.

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider,

in sequence, whether a claimant (1) is engaging in substantial gainful activity,[12] (2) has an impairment that is severe or a combination of impairments that is severe,[13] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[14] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[15]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.

---

[12] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[13] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

[14] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[15] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge went through the 5-step sequential evaluation process and determined that Smith could not perform his prior relevant work but that he had the ability to engage in a limited range of unskilled, light work. Tr. 14-15. In setting the residual functional capacity, the ALJ relied in part on what she referred to as "assessments completed by the State Agency and the findings of fact made by the State Agency and other program physicians regarding the nature and severity of the claimant's impairments." Tr. 18. Based on a light work residual functional capacity and the testimony of a vocational expert, the ALJ found that Smith could perform work as cleaner polisher, retail industry marker and an automatic film developer, and that there were a significant number of such positions in the state and national economies. Tr. 20.

Smith argues, *inter alia*, that the administrative law judge erred (1) by failing to appropriately evaluate the medical evidence, including the opinion of Kenneth H. Tomczyk, D.O., a treating physician, and (2) in setting the residual functional capacity at a light work exertional level. With respect to the ALJ's residual functional capacity assessment, Smith contends that the ALJ misinterpreted a functional capacity evaluation of Smith performed by Mark L. Rowan, a physical therapist, which was requested by Dr.

11

Tomczyk.[16] Tr. 567-584. Those arguments have substantial merit.

In this case there was no assessment of the functional capabilities of Smith from a physician which supported the administrative law judge's residual functional capacity assessment and the bare medical records and other non-medical evidence were insufficient for the administrative law judge to conclude that Smith had the residual functional capacity to engage in light work. Light work requires that an individual be capable of engaging in frequent lifting and carrying of objects weighing up to ten pounds. "Frequent" is defined under the regulations as up to 2/3 or 67% of an 8-hour workday. The functional capacity assessment completed by Mr. Rowan indicates that Smith could only engage in back lifting and leg lifting of 8 pounds, power lifting of 10 pounds, shoulder lifting of 20 pounds, overhead lifting of 10 pounds, two hand carrying of 12 pounds, one hand carrying of 9 pounds, pushing/pulling when walking of 10 pounds, and push/pulling when standing of 11 pounds. Tr. 567. All of these activities could only be engaged in by Smith on an "infrequent" basis which was defined in the evaluation report as 1 to 2 percent of a workday. Id. The ALJ based her residual functional capacity assessment on Mr. Rowan's report but in doing

---

[16]On April 12, 2011, Dr. Tomczyk wrote a letter to Smith's attorney regarding the functional capacity evaluation performed by Mr. Rowan which states in part as follows:

> Based on these results I recommend that he be enrolled in a rehabilitation program for at least 6 months prior to entering back into [] a work environment. . . Mr. Smith was involved in an ATV accident in October of 2008. . . He sustained multiple injuries . . . Based on these injuries, he has a poor level of musculoskeletal fitness for which he would benefit from a rehabilitation program, Afterwards, he would then undergo another Functional capacity evaluation to determine if he [is] able to perform any substantial gainful work.

Tr. 546.

12

so misinterpreted that report.

The ALJ also relied in part on what she referred to as the functional assessments of state agency physicians. However, this was a legal and factual error because the individual, John S. Berlyn, who reviewed Smith's medical records was not a physician but a non-medical state agency adjudicator, and there is no evidence in the record that a state agency physician reviewed the opinion of Mr. Berlyn. Tr. 69-76. In fact the "Disability Determination and Transmittal" forms relating to the initial denial of Smith's DIB and SSI claims by the Bureau of Disability Determination were only signed by Mr. Berlyn and were not signed by a physician in section 32 entitled "Physician or Medical Spec. Signature." Tr. 69-70.

This court has repeatedly found such statements from non-medical disability adjudicators insufficient evidence of a claimant's residual functional capacity. See, e.g., Ulrich v. Astrue, Civil No. 09-803, slip op. at 17-18 (M.D.Pa. December 9, 2009)(Muir, J.); Spancake v. Astrue, Civil No. 10-662, slip op. at 15 (M.D. Pa. December 23, 2010)(Muir, J.); Gonzalez v. Astrue, Civil No. 10-839, slip op. at 16 (M.D.Pa. January 11, 2011)(Muir, J.); Peak v. Astrue, Civil No. 10-889, slip op. at 25 (M.D.Pa. January 24, 2011)(Muir, J.); see also Dutton v. Astrue, Civil No. 10-2594, slip op. at 22 n. 32 (M.D.Pa. January 31, 2012)(Munley, J.); Rich v. Colvin, Civil No. 11-1778, slip op. at 19-20 (M.D. Pa. April 29, 2013)(Kosik, J.).

With respect to the reliance on a form completed by the state agency disability adjudicator, administrative law judges have been instructed to accord such documents no evidentiary weight. See Doc. 12, pages 14-15 in Edwards v. Astrue, Civil No. 10-126 (M.D.Pa.)(quoting a memorandum from the Chief Administrative Law Judge stating the

policy of Social Security Administration prohibits Administrative Law Judges from according any weight to forms completed by the non-medical state agency disability examiners).

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.


                                          s/A. Richard Caputo
                                          A. RICHARD CAPUTO
                                          United States District Judge

Dated: May 8, 2013